**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

FRANCISCO MARTE :

Plaintiff :

v : Civil Action No. WMN-08-3309

STATE OF MARYLAND, *et al.* :

Defendants :

o0o

**MEMORANDUM**

Pending is Defendants' Motion to Dismiss or for Summary Judgment. Paper No. 25. Although he was advised of his right to file a Response in Opposition and of the consequences of failing to do so, Plaintiff has filed nothing further in this case. For the reasons that follow Defendants' motion, construed as a Motion for Summary Judgment, shall be granted.

**Background**

a. Plaintiff's allegations

The complaint concerns an assault on Plaintiff when he was an inmate at Eastern Pre-Release Unit (EPRU). Paper No. 1 at p. 9. He was assaulted by another inmate who used a five-pound weight to strike Plaintiff in the head. As a result of the assault, Plaintiff suffered a fractured skull and was transported to Johns Hopkins Hospital where he stayed for four days. He filed the instant complaint because the inmate who assaulted him, Tommy Lee Pore, allegedly had a long history of violent behavior. Plaintiff claims prison officials, as well as Division Of Correction (DOC) officials, knew or had reason to know that his assailant presented a known risk of harm to him.

Plaintiff asserts that the battery upon him was perpetrated with a five-pound barbell[1] which Mr. Pore must have either openly carried from the exercise area to the housing unit, or secreted within his clothing or otherwise upon his person before entering the housing unit. Paper No. 1 at p. 10. He asserts there was a heightened need to observe and monitor Mr. Pore's behavior, given the violent threat he posed to Plaintiff. Once Mr. Pore brought his weapon into the housing unit, he maneuvered himself to a position behind Plaintiff and struck him in the head with great force, fracturing his skull as well as "other serious injuries."

Plaintiff claims that prison staff were "deliberately neglectful" because they failed to monitor Pore's exit from the weight room, enabling him to transport his weapon to the housing unit. In addition, he asserts that the administrators of the prison were deliberately indifferent to the need to train employees about the rules and regulations, the purpose of which is to provide protection to inmates from being harmed by other inmates. Plaintiff further alleges that he attempted to file an administrative remedy procedure request with the Inmate Grievance Office (IGO), but his attempt was unsuccessful. He names as a Defendant an anonymous corporation which he asserts monitors and censors inmate mail. He claims prison staff routinely suppress access to administrative remedy forms, routinely confiscate complaints, and destroy items marked for delivery to the IGO.

Plaintiff seeks monetary damages for five counts: (1) constitutional deprivations regarding failure to protect Plaintiff from violence and deprivation of access to administrative remedy procedures; (2) conspiracy to deprive Plaintiff of due process by intentional loss of Plaintiff's ARP and arguing non-exhaustion in the Circuit Court for Baltimore City resulting in dismissal of his claim; (3) gross negligence under state law; (4) negligent hiring, retention and

---

[1] Defendants state the instrument used was actually a five-pound plate that is disc shaped and can be placed at the end of a bar for weight-lifting. Defendants suggest that such an item would be easy to conceal. Paper No. 24 at p. 7; and Ex. A, Attachment 4, pp. 217—229.

supervision under state law; and (5) civil conspiracy under state law. Paper No. 1.

b. Defendant's undisputed allegations

EPRU is a pre-release facility, with security measures which are lower than minimum security. The facility houses 180 inmates who are divided among three dormitory style housing units. Inmates are not permitted entrance into a housing unit in which they are not assigned. The inmates assigned to EPRU and other pre-release facilities are within a few months or weeks of release on parole or mandatory supervision and have earned their placement there as a result of good conduct during their incarceration. Pre-release inmates are generally afforded a greater degree of trust so that they may prepare for their return to the community. Approximately 30 EPRU inmates participate in work-release programs at businesses in the community, another 60 or 70 inmates work on details for the surrounding counties, and the remaining inmates remain at the institution during the day. All inmates with an outside work assignment leave EPRU daily for their assignments and return at the end of the day. Inmates, including Plaintiff and his assailant, who are not on work-release or county details, remain at EPRU during the day

There are approximately 35 correctional officers assigned to EPRU, divided among three shifts ( 6 to 2, 2 to 10 and 10 to 6). Five or six officers were working on the afternoon shift when the assault on Plaintiff occurred. Two officers are assigned to go into the community to pick up work-release inmates and return them to EPRU; two officers are assigned to the control center; and the remaining officer(s) are assigned to the yard patrol. The yard patrol officers are responsible for observing all areas of the prison for security, safety and sanitary operation.

To control contraband in the prison, inmates leaving EPRU are patted down by an officer; inmates returning to EPRU are strip-searched; and there are random searches throughout the day within the prison. In addition, the Lieutenant in charge of a shift will randomly require a search

of everyone coming into the institution from the yard and searches the housing units, common areas and vehicles. Despite efforts to deter contraband, the searches recover contraband items including banned tobacco products.

Through the investigation conducted in the aftermath of Plaintiff's assault, Defendants discovered that his assailant, Pore, was angry because Plaintiff owed him three dollars for cigarettes and tobacco products. Eyewitnesses to the assault stated that Pore approached Plaintiff from behind, struck him with the weight on his head, and Plaintiff immediately dropped to the ground, bleeding heavily. Pore stated, "I am not to be fucked with" after he assaulted Plaintiff. Two inmates who witnessed the assault helped Plaintiff to his feet and escorted him to the control room where they informed officers that emergency medical assistance was needed. Medical assistance was provided to Plaintiff immediately and he was transported to Johns Hopkins Hospital.

**Standard of Review**

Summary Judgment is governed by Fed. R. Civ. P. 56(c) which provides that:

> [Summary judgment] should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). "The party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [its] pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.*, 840 F.2d 236, 240 (4th Cir. 1988).

**Analysis**

a. Constitutional Claims

i. Eighth Amendment Failure to Protect

In order to prevail on an Eighth Amendment claim of failure to protect from violence, Plaintiff must establish that Defendants exhibited deliberate or callous indifference to a specific known risk of harm. *See Pressly v. Hutto*, 816 F. 2d 977, 979 (4th Cir. 1987). "Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective, any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that

criminal offenders pay for their offenses against society." *Farmer v. Brennan*, 511 U.S. 825, 833– 34 (1994) (citations omitted). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id* at 837. *See also Rich v. Bruce*, 129 F. 3d 336, 339– 40 (4th Cir. 1997).

The complaint is filled with bald assertions that Defendants knew that Plaintiff's assailant presented a threat of harm to him due to the nature of his criminal offense and his institutional adjustment. Defendants, however, have provided verified documents and sworn statements to the contrary. There is no evidence to dispute that Defendants were unaware there was a danger that Plaintiff would be attacked by Pore. Prisons, even minimum security ones, are frequently the site of violent assaults. Prison officials are not strictly liable for those assaults; the seriousness of the resulting injury in and of itself, does not require a finding of culpability.

ii. Administrative Remedies and Access to Courts

"Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.' *O'Dell v. Netherland*, 112 F. 3d 773, 776 (4th Cir. 1997) *quoting Lewis*, 518 U.S. at 355. "The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." *Lewis v. Casey*, 518 U.S. 343, 349 (1996).

Plaintiff claims his administrative remedy procedure request was purposely lost in order

to prevent his claim from going forward. This assertion is without any evidence to support it and borders on malicious. Indeed it appears the allegation was simply made-up out of whole-cloth, as there is no private corporation that censors mail being sent to the IGO or elsewhere. In the absence of any evidence that any named Defendant prohibited Plaintiff from pursuing a valid claim in court, Defendants are entitled to summary judgment in their favor.

b. State Law Claims

To the extent that the Complaint contains viable state law claims that are appropriately before this Court, the claims are dismissed without prejudice. A federal court may decline to exercise supplemental jurisdiction over state law claims where it has dismissed the federal claim. *See* 28 U.S.C. § 1367(c). When, as here, the federal claim is dismissed early in the case, the Court is inclined to dismiss the state law claims without prejudice rather than retain supplemental jurisdiction. *See Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

**Conclusion**

The undisputed facts establish Defendants are entitled to summary judgment. A separate Order follows.

/s/

4/8/10
Date

William M. Nickerson
United States District Judge